I represent the appellants herein. However, by virtue of the fact that my clients appealed from a Bankruptcy Appellate Panel opinion, my position is really to support the Bankruptcy Court's ruling in this case. And I do, in fact, support that ruling and believe that the evidence and law supports it also. The question presented for the court, for the panel, is whether the settlement that was entered into between the trustee and the Warnicks that was approved by the court on March 22, 2001, was reasonable given the particular circumstances. Well, the Bankruptcy Appellate Panel found that it was reasonable, but that's not the issue. The issue is whether, after the distribution of $3.2 million, there was, quote, adequate protection for other parties with an interest. Correct. That's the issue. Correct. The appellee acknowledges the reasonableness and only contends that the settlement agreement should, in fact, be modified by this court because it violates adequate protection rights that the appellee claims that the appellee had at that point. I didn't think it was a matter of modifying the settlement agreement. It was a matter of challenging the order of distribution which permitted the $3.2 million to be dispersed without any retention of funds to provide adequate protection. It would modify the settlement agreement because a material term of the settlement agreement was that the $3.2 million would be dispersed upon the close of the escrow for the sale of the property. And accordingly, it is that term, that material, indivisible term of the settlement agreement that appellee contends violates its adequate protection rights, contending that $2.15 million of that should not have been paid. I wouldn't think it's a matter of modifying the agreement as providing, as complying with the Bankruptcy Code. The issue would be, does the Bankruptcy Code conflict with that provision of the settlement agreement requiring that provision of the settlement agreement to be disregarded? Because it is a material and indivisible provision of the settlement agreement. Are you saying the settlement agreement constitutes a waiver of the adequate protection requirement under the Bankruptcy Code? I'm saying that, two things. I'm saying, one, that adequate protection was provided consistent with the terms of the settlement agreement. I don't understand that. Either there's adequate protection or there's not adequate protection. After the disbursement of $3.2 million to the Warnicks, there was not less than $2,998,000 remaining with the trustee after the payment of all of the liens on the property. And the question is whether that's adequate protection. Correct. The appellate panel found it was not and explained why it wasn't. So you need to tell us why they're wrong. Okay. That's what I'll do. The interest, first of all, at the point in time when the settlement agreement was approved, the sale order was made, and the sale was closed, appellee had not yet made any request for adequate protection. So the initial issue becomes, when did the court's obligation to provide adequate protection become triggered? It's my contention that it wasn't triggered until the motion for reconsideration was made. Is that argument made in your brief? It's mentioned in the brief that there was no request made for adequate protection until the motion for reconsideration was filed. It's stated. It's not further argued. Now, the adequate protection that is to be provided is protection to protect the interests of the appellees, to provide them with, as Appellee's Counsel states, the indubitable equivalence of what they had. Now, in order to determine what they had, we have to look at the sale of the property, and we have to look at the partnership agreement, because one of the issues that has to be determined is who is entitled to adequate protection. The Bankruptcy Appellate Panel found that there was not adequate protection provided because it was the partnership who was entitled to adequate protection, not the appellee, not Beverly Rodeo Development, the party who had objected to the settlement agreement. Which is a partner. Which is a partner. Which contends it was a partner. Well, that's still an issue in litigation. Correct. That's still an issue in litigation. Now, a partner's rights are not to the ownership of property, but to the profits and losses and the distributions of the partnership. This partnership agreement sets forth in paragraph 4.05 the priorities of distribution upon a sale of the property. And wouldn't a partner be entitled to the equitable or the partnership share, or that partner's share in the proceeds from the sale of the property? A partner would be entitled to his share of the net sale proceeds from the sale of the property in accordance with the priorities set forth in the partnership agreement. The priorities set forth in the partnership agreement mandate the payment of certain expenses and the payment to each partner of its capital accounts prior to the distribution of any portion of the profits to that partner. So at the point in time when the request for adequate protection was made, the property had been sold, and accordingly the rights of the appellees were governed by and limited by 4.05 of the partnership agreement. And accordingly, adequate protection to be provided is only that protection that would provide the appellee with the equivalent of what it appeared the appellee would become entitled to after the application of paragraph 4.05. One of the problems in this case is that the appellee did not provide the bankruptcy court with any information with which to make a determination of what its distributive share would be under paragraph 4.05. Not having made a request for adequate protection, it provided the court with no information from which to determine the appropriate amount of adequate protection. Accordingly, what the court did is it approved the settlement agreement and the sale motion, which provided for the payment of the $3.2 million to the Warnets, as well as the payment of a number of other liens that encumbered the property, and ordered the trustee to hold the rest of the funds to provide the appellees with adequate protection. According to the analysis set forth in the brief, and that was set forth in opposition to the appellee's motion for reconsideration, in the bankruptcy court, even after the payment of the $3.2 million to the Warnets, there were sufficient funds remaining because the estate netted $10.5 million. After paying the undisputed obligations, which appellee acknowledges, and which equaled $5,352,000, and paying the Warnets total amount, there was $2.998 million left. If the plaintiff appellee had only a 50 percent interest, the bankruptcy appellate panel determined that it may be different after the resolution of interparty accounts. The evidence before the bankruptcy court at the time that it approved the settlement agreement and the sale motion that provided for these disbursements indicated that appellee had a 50 percent interest in the partnership. The appellee provided the bankruptcy court with no accounting. The appellee provided the bankruptcy court with no evidence whatsoever pursuant to which it could be concluded that it was entitled to more than 50 percent of the proceeds. In fact, it's acknowledged by appellee that the exact amount can't be determined until there's a reconciliation of accounts. Now, not having any information in front of it at the time that the settlement agreement and sale motions were approved by the court, the court could only assume, and the trustee could only assume what was before it. And what was before it was two 50 percent interest partners with no other information provided to the court concerning the amount of their capital accounts or any other obligations by the partnership to the partners. The bankruptcy court know at the time that there was litigation pending between the parties? It did. To resolve their conflict over who and how much of the property? So they couldn't provide specific information. There was litigation pending at the time. However, the appellees didn't even make an attempt to present the court with evidence of the extent of the appellee's distributive rights in the proceeds. What the appellees did is presented the court with photocopies of a number of checks adding up to $1.8 million. For the purpose not of convincing the court of the extent of its interest, but for the purpose of convincing the court of the fact that it contended a partnership on the property. The bankruptcy judge looking at those checks stated on the record that he couldn't make head nor tails of the checks. There was no indication what they were for, what interest they conveyed, what obligation they implied. Accordingly, other than for the position that they supported a contention of partnership interest, they were truly disregarded. Now, if one therefore assumes that the best evidence or the reasonable evidence for purposes of determining adequate property, protection that was before the court at the time was 50 percent partners whose distribution rights were governed by Paragraph 4.05 of the Partnership Agreement, and knowing what the amount of the sale proceeds from the sale of the property was and what the liens paid off for, it could then be determined that there was, in fact, adequate protection given for the following reason. Appellees contend that there was undisputed obligations of $5,352,000 to be paid out of the 10-5. That left about $5,100,000-some-odd-thousand left for the, quote, partnership after the payment of those undisputed partnership obligations. Now, if the court assumes... Well, we're not seeking any further funds. We were happy with the ruling from... I understand, but why don't you accept the BAP ruling, and why are you here? Because the BAP ruling would require us to disgorge about $2.5 million and put that money back into... What? There's plenty of money. You get it back. What's the harm? I mean, if you're sitting here telling us how much money there was to go around and, you know, plenty of proceeds and all that, you put it in, you get it back. Big deal. So why are you here? Well, first of all, at this present time in the bankruptcy court, there is no litigation pending in that court concerning the issue. You have a remand order from the BAP, right? If you have a further notice of appeal, you would be back in bankruptcy court. We would be back in bankruptcy court. And the bankruptcy court would be litigating and adjudicating the rights of the parties in the partnership, right? The bankruptcy court would be litigating in this context the issue of the entitlement of the two partners to the sale proceeds under the agreement. And that's going forward anyway, isn't it? No. There are disputes between the trustee and the appellee. We're no longer involved in any of those disputes. There is state court litigation pending. I take it the trustee's been removed since he was... Well, that would take care of the money that's to be disgorged, right? Determine the entitlement to those funds. That would determine... Well, the state court litigation involves those issues. It also involves a number of other issues because, as you'll know from the briefs, there was an agreement entered into in September 2000 and also in October 2000 in which the appellee agreed, along with the principles of the debtor and certain other entities, to pay my clients a certain amount of money, 3.... That was never approved by the court. Well, but there were provisions of it that are relevant to this that didn't require approval by the court. There were... Well, the settlement agreement itself provided that it would be enforceable and binding without further approval of the court. But the approval of the court isn't required with respect to most, perhaps all of it, because most of the allegations undertaken therein, perhaps all of them, were undertaken by parties that were not subject to the bankruptcy court's jurisdiction. They were strange... I'm sorry. The September 6th agreement is attached to appellant's excerpts of record as a tabbed item 6. This is actually a typed version of it. In the agreement in paragraph... Tab what? 6, which is a typed copy of the handwritten agreement. So it's conditional on what's provided in the statute. Well, what CCP 664.6 says is that if the parties enter into a written agreement settling litigation, or if they enter into such an agreement in open court, then a court has the authority to enter a judgment based upon that agreement. There was state court litigation pending at that time. The court does not enter into an open court. No, it wasn't, but... How did it become effective? It was signed by the parties to be charged.  I think 664.6 provides that upon application, a court, at least in the state court proceedings that were pending, had the authority to enter a judgment based upon the terms of this settlement agreement. And you think that's the equivalent of saying this is a binding contract? Well, I don't think that's the equivalent. I think they're separate issues. I think it is a binding contract. And secondarily, I think it's also possible to have caused a judgment to be entered based upon the terms of this binding contract. I think it's an argument. Maybe it's a good argument, but it's no more than an argument. Until there's a binding ruling, all I got is arguments. With respect to the parties to that agreement... What happened to this agreement, the September 6th agreement? Well, what happened is that there was... And pursuant to its provisions, a payment of $1.7 million was to be made on September 14th. By whom? Eight days later, by both Yassian and Perry, by appellees and by the principles of the debtor, who were also the principles of certain other obligors. Not using estate assets. Not using any estate assets. Okay, so was that money paid? No, it was not paid. The agreement was breached. And then Chapter 7 was filed, right? And then by virtue of the fact that... So what does this agreement now give you, if it was breached? It gives me ratification of the liens that were security. How do you have ratification in an agreement when the agreement was nothing but a piece of paper? Nothing came of it? How can that be? Because the ratification of the obligations exists regardless of whether or not this agreement is performed or breached, as long as it's not breached by the party in whose favor the ratification runs. The agreement specifically provides, in Paragraph 7, as follows. It says, One of the arguments made in the brief is that appellees contend that the Sixth and Seventh Trustees were unauthorized because they weren't consented to by appellees and accordingly should not have been paid from the sale proceeds and that their payment interfered with their rights to adequate protection. My position, as I argue in the brief, is even if you assume that appellees and the partnership had no obligation for this money, they were still provided with adequate protection. However, another argument is that since there was ratification of these liens and these obligations, then the obligations were obligations of the debtor, of the appellees, and of the partnership. Do you think this argument blowed to the BAP? I made that argument to BAP, yes. They didn't decide it? BAP didn't decide it. BAP approved the settlement agreement, but yet still ordered disgorgement. You mean the settlement, you don't mean this agreement, the September agreement. No, I don't mean that. I mean the settlement agreement between the trustee and the Warnicks that was submitted and approved on March 22. Because on the premise that these deeds of trust were not, presumptively not valid. No, I don't believe that that was the basis. I believe that the basis was that they thought that certain of the funds that were held by the trustee after the sale were not funds of the estate. And accordingly, since funds that were not funds of the estate were being used to provide adequate protection, that somehow that was inappropriate. Thank you. Good morning, Your Honors. David Weinstein with the appellate before you. It's clear in listening to the colleague before, the Court thoroughly read the record. Or at least address your remarks. I'm sorry. Yes, it's clear that the Court has thoroughly had an opportunity to read and fully understand what's happened so far. I would not propose to walk through the entire case, but rather I will attempt at least to confine myself to respond to some of what I heard from my adversary before you. But would you address the question whether your clients waived the adequate protection provisions by not having brought it up in a timely manner? Yes. The adequate protection issue was prominently raised in the reconsideration motion that was filed before the sale closed. Well, is that timely to do? Yes. The bankruptcy court considered on the reconsideration motion at the trial level, the bankruptcy court fully considered the adequate protection issue, ruled adversely to us, but fully considered it, said nothing, and did not rule that it was untimely and would not be considered or had been waived or anything to that effect. Rather, it fully considered that issue. And I would submit to Your Honor, in addition to that, although I think that directly and finally answers the question as you put it to me, that I would also add that as a matter of bankruptcy law and interpretation by courts that have looked at this already, the statute requires adequate protection of an interest removed from an asset being sold free and clear of liens, interests, and encumbrances. So while one could get into some interesting questions about whether that sort of issue could be waived by having been silent too long, and if we had a set of facts where there was silence way down the spectrum, it would be perhaps a difficult problem. It's nevertheless true that this is an obligation on the process, and the obligation is on the trustee or the debtor in possession, as the case might have been, to afford adequate protection and to affirmatively offer it. Now, again, it's another case that we don't have. If that hadn't been done, if the affected, removed party never brought it up, and somehow positions had changed and all sorts of things had happened, one can have a number of permutations on those hypothetical facts, and I can't propose to answer all of them here. But we don't have that problem because it was raised at the trial level, admittedly most prominently, overtly, if you will, in the reconsideration level, but it was not rejected at that point as untimely. And going further on that and going back to one of the points that was made in the opening comments with respect to who is rights or interests are removed to the proceeds. But I would specifically refer, if the Court wants something more precise to this case, in the appellee's – I've been working from the appellee's supplemental excerpts at a tab 7 page, consecutive page 1025, we have the last page of the sale order, and it identifies – and this was, for what it's worth, this order was specifically authored by the court, not in keeping so much with local practice where lawyers, at least in our district, tend to submit orders for the court's review, the court authored its own order here and specifically noted that removed to the proceeds were, among other things, quote, the alleged interest of – and I'm paraphrasing slightly – the alleged interest of the partnership. So the partnership would certainly be one of the entities entitled to added protection as a matter of law. And that is a necessary result of the term of the order as well as the statute and structure of the entire proceeding. That also identifies that while my adversary has made reference to the settlement order and that this would require a restructuring and a rewriting of the settlement, which I think Your Honors questioned my adversary about, I would point out that the BAT more correctly really addressed, as the focal point of all this, the sale order. Now, there was – there is some ambiguity. We didn't prepare either one of these orders. There is some ambiguity in exactly what each order provides and compels. And it's – frankly, as a matter of self-protection, client protection, we filed notices of appeal from both orders for that very reason. But nevertheless, the BAT read deeper into it. I have a question. You're representing Mr. Yessin? And Beverly Rodeo, which is the partner in – one of the partners in the – the non-debtor partner in the partnership. Right. But you're not representing a partnership, obviously. Correct. And what about the standing problem, the fact that Mr. Yessin is not – the partnership agreement requires unanimity to act on behalf of the partnership, and it's really the partnership that has the interest here. Well, again, Your Honor, and these are arguments that were made by our adversary. And they cite, for example, in bringing this to your attention, they cite to the CCP, California CCP, and they skip over the fact this was not a proceeding. This was not a legal proceeding, a lawsuit, or any kind of petition initiated by the partner or the partnership. This was an interested party's response to a blanket motion. It's not even a, if you will, one-to-one lawsuit orientation of a plaintiff versus defendant. Rather, it's a trustee's motion given to all persons interested in the bankruptcy case of proposed proceedings. You may have an interest, but, you know, the question is whether – I mean, you, your client. He has standing. I mean, he may be intensely interested in things that you're not saying anything about. Well, but the client, as the partner, clearly has an interest in the outcome, an economic interest in the results that were effectuated here. He probably does. And the analysis is the damage was done because adequate protection was not – the adequate protection is – I think you're right in all those things. Nevertheless, you can suffer lots of damage and yet have no standing to raise the legal issue. And since the right here at issue is the right of the partnership, your client may in fact be severely damaged by that. But if he doesn't have standing to assert the right, it's too bad. So telling me how badly he wants to be involved and how much he suffers and all that doesn't get us past the basic point that he doesn't have the right. He can't act on behalf of the entity that has the right. So I'm just wondering how you're – There are two answers. Number one, in the reply brief, our adversaries acknowledge that where there's – where the partnership's participation, if that's the standard, and that's what I think Your Honor is alluding to first, is – cannot be achieved and it's futile to even seek it, that that stands – and our adversaries themselves cite in their reply brief that where there's a futility factor, as in a lot of areas of the law, the law doesn't require that sort of futile step. And here, the other partner – I'm not sure what that means. If your client doesn't have standing because he doesn't own the right, the right belongs to the question is, can he go into court and assert a right that belongs to an entity which is not him? He could maybe move for dissolution of the partnership and a distribution and all that and somehow reduce the partnership's interest to a personal one, but I'm sure he does. Am I mistaken in my understanding that the right here, whatever right there is, belongs to the I'm not sure – I'm sorry, I didn't mean to interrupt you. Mr. Yassian doesn't have any rights as an individual. Well, if you're asking Mr. Yassian individually, no, we're primarily speaking of Beverly Rodeo, so we have that distinction as well. Okay, then that's fine. Okay, but speaking to Beverly Rodeo or the partner, if you will, the partner has direct economic sure that the partnership's rights from which its own interests specifically derive are preserved. As we said, and I certainly didn't mean to be glib about it, but we said it's Hornbrook law that a partner, a general partner in a general partnership, which is what this was, can speak for and advocate for the partnership. In the ordinary course of business. And again – This is certainly not the ordinary course of business. Well, but, Your Honor, this is an equitable proceeding in which everyone affected downstream, if you will, through the entity chain, if you will, is affected by a proceeding that they didn't instigate. Someone has to speak up. I understand. That's certainly a plausible position, and maybe that's a position that would give you a right to dissolve the partnership and say, look, the partnership is no longer – I don't remember how you do partnership in the state law, but there is a way of doing it when you reach an impasse. And you say, now we seek a distribution of partnership rights because we have an impasse. But that step wasn't taken until that step is taken. Aren't rights held by the partnership – There's a couple of answers to that. So don't rights held by the partnership have to be exercised by the partnership and no one else? No, because this is not rights quite in the sense of causes of action that a plaintiff, for example, would assert. Rather, the adequate protection creates a framework for an analysis as to how the trustee's motion or the trustee's proceedings can be implemented within the specific confines of 363F, which is what he proceeded under. Was it relevant that the members of the partnership are adversaries in this proceeding? And the BAP made that point in their amended memorandum. That's correct. And to answer more directly Your Honor's thinking a moment ago, Judge Kaczynski's thinking a moment ago, Judge Schwartz, you are correct, because here, again, because the parties you are speaking to now, if you will, the parties who are standing here questioning did not instigate this, did not control the process. There was neither practical nor legal ability to cause any of the dissolution-type proceedings, because this motion comes on on 20-some-odd days' notice, perhaps subject to a continuance, perhaps not, and no opportunity, no cause to seek it. But you're going to say, well, I can't get the partnership to move. I'd like a continuance to get a dissolution. That much is true, but I would also- No, no, no. That much is true. There's no question that that's true. What Mr. Gershwin did is he said, I'm going to simply assert the right of the partnership, even though I don't have the concurrence of my fellow partners. Well, again, I would say two things. Number one- I mean, it's factually. That's what happens. Well, yes, with an important but, because the adequate protection analysis provides a framework. I'm sorry. The adequate protection concept provides a framework for the analysis. That is, in my mind, and I suggest to you different than- What's the entity being adequately protected? The entity being adequately protected is the partnership. That's correct. If the partnership chooses not to, for whatever reason, seek that protection, I'm not- Well, I think now you've moved- At a loss how somebody can come in- I'm sorry, I think- And say, nevertheless, this entity needs- Maybe you've got a case on that. Well, 363 provides protection for anybody claiming an interest. Is that right? For anyone whose interest is removed from the asset in question. Right. Well, doesn't that extend to a member of a partnership? We certainly believe that it does, among other reasons. Would it extend to a shareholder of a corporation? If the structure of the facts was such that that- It's a shareholder. Your Honor, I- It's a big corporation. You've got a billion, you know, dollars worth of shares. If it was- And certainly when a shareholder comes in and says, no, no adequate protection. If it's- I think what Judge Schwarzer was suggesting was correct, and the answer to- and the questions and the points dovetail. Any party who's affected by the proceeding has the right to have that interest adequately protected. The partner's right, the partner's interest, excuse me, is derogated if the partnership's interest is derogated. So it's a shareholder's interest. And to answer your question, I would submit to you that if the facts were such that the shareholder could make any reasonable showing that the value of the shareholdings was directly impacted by the proceedings at hand, then the answer would be yes. So you can have any shareholder come in and seek adequate protection of the corporation, even though corporate management chooses for whatever reason to settle the case or resolve it or anything else. Every shareholder out there, in your theory, can come in there and clear the deal by saying no adequate protection, because we think the corporation ought to be run a different way, and my shareholder price will drop if it's done their way rather than my way. Well, I submit you're cobbling together, Your Honor, a number of hypotheticals, one on top of the other. But I say the underlying concept is that if the shareholder's interest is directly derogated by the proceeding at hand. Do you have a case? I do not have a case that speaks to that. I don't know that I've ever heard. Do you have a case involving a part on the partnership? I mean, it is one thing to say anybody whose interest, who's got an interest as does a partnership, interest meaning an actual right, gets adequate protection. It's another thing to say everybody who's a dependent or a shareholder or a brother or sister or somebody who hopes to inherit from somebody who somehow can claim that their interest is going to be impaired. I mean, that line is endless. And do you have any case, this is my question, that involves an assertion of this right by somebody who is not the entity actually holding the right that's being impaired? I do not have that case today. And I do not know that that case exists. I do not know that there's a case that negates the concept nor supports it. Okay. It would be helpful if you did. I will do another search and submit within this court. I mean, out of all the bankruptcy cases. Yes, because actually the cases that squarely address, if you will, what we have before us today are comparatively rare because the very notion of removing an owner's disputed interest is itself rare. And this is either a step removed or a second level of complication to that. If you were to write a precedent, an opinion along the lines you suggest, this would pretty much mean that anybody who has an interest in an entity that has a claim like this, whether this be a partnership or a corporation or an association or a labor union, whatever this entity is, if any of the members thought, gee, my interest is going to be impaired by the way the people who are on the entity are conducting this business, I can come in and second guess. No, I don't think I go that far and I don't think Your Honor has to go that far to support the outcome we want here. David, we're only dealing with a free and cleared sale. For sure, that's correct. We're not talking about interest generally. That's correct. Free and cleared sale. Where they're removed, they're disputed by definition, they're removed from the asset where they exist in the non-bankruptcy world for resolution later. And downstream, whether it be conceptually or through a series of entities or related entities, there could be a factual showing of an impact. There's no question here of the direct potential factual impact on this litigant, on this appellee. Your Honor, I don't think you need to go so far, particularly not in writing or thinking about this case. Hasn't this argument been waived? They didn't raise it. They didn't raise this argument at the bankruptcy court. We have authority saying it's raised. I'm sorry, Your Honor? We have authority saying it's been waived. DCD programs against Layton says if you don't raise the objections of this kind, you waive it. They waived it. I agree with that, Your Honor. I've been attempting to respond as best I could. Is this a standing argument? Can we waive it? Well, I've been coming back. I don't believe that this is standing in the pure, in the constitutional or litigation sense that, Your Honor, and perhaps we will forever disagree, Your Honor, but I don't think it's the same sort of analysis because this is not an instigated litigation right in the nature of a cause of action being advocated by a litigant in the classic sense. This is a respondent to an open-ended proceeding, you know, clearly of equitable structure and equitable form in a bankruptcy case, to be generic, and that calls for the identification and protection and addressing, in the most generic, protection. I don't even want to go there, but rather say addressing a variety of rights that are affected in a variety of ways. And I submit that the voice to speak to that is much different and is much softer, if you will, in testing it than standing in the, what I think is the much more classic traditional litigation sense that I think Your Honor is using it. And I don't think that this is the same thing because the question is the impact of this other proceeding on the speaker, if you will. And I think I trust you on this. My point is clear in terms of when I say the speaker, the objector, the respondent, which is what we are in this context. That's very different than bringing a lawsuit to the Federal District Court and having the right constitutional status. Sorry. I apologize. I would close only by pointing out also that the common theme in our adversaries' arguments is the assumed outcome of facts that were and proceedings that were deferred to later. And one of them is the 50-50 issue between the partners, which is which is why that partnership issue has to be preserved. I see my time is up. Thank you. Thank you. Oh, I'm sorry. You want to take 30 seconds to say something that's absolutely necessary. There was a question about the standing issue having been raised. It was raised in the Pelham. So in brief, it's it's point five D commencing on page 24 of the brief. You raise it with the back. Yes. It was raised in both places. Where do we know that? I guess I would have to look at my. What your answer is, if you look at your brief, we'll see the issue raised. The standing issue raised. Yes. That's my recollection. What the BAP deal with it. Yes. The BAP dealt with it. BAP said since the other partner was not agreeable to protect the interest, then this partner had no other alternative in essence. The other partner affirmative. This was not waived. Correct. The other partner affirmatively supported this disbursement, taking the exact opposite position that appellee is taking with respect to adequate protection. Okay. Thank you. Where did you say it was in your brief in this court? It's on page 24. Okay. I see. No, I see it here. Thank you. Okay. Thank you, counsel. Cases are you can submit. We are adjourned. All right. Court stands adjourned.
judges: Kozinski, Noonan, Schwarzer